UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES MUTKA, an individual,

    Plaintiff,

v.                                          Case No:   2:18-cv-539-FtM-38MRM

TOP HAT IMPORTS, LLC,
d/b/a Tamiami Hyundai,

    Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Defendant Top Hat Imports, LLC's Motion to Compel Arbitration and Stay Case, filed on December 21, 2018. (Doc. 25). On January 2, 2019, Plaintiff James Mutka filed a Response in Opposition to Defendant's Motion to Compel Arbitration and Stay Case. (Doc. 29). Defendant filed its Reply to Plaintiff's Response to Motion to Compel Arbitration and Stay Case on January 10, 2019. (Doc. 31). These matters are ripe for consideration.

### I.    Background

On August 6, 2018, Plaintiff initiated this action against Defendant by filing a four-count Complaint. (Doc. 1). Plaintiff claims Defendant wrongfully terminated him because of his age.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

(*Id.*).  On December 21, 2018, Defendant filed the Motion to Compel Arbitration and Stay Case. (Doc. 25).  In this Motion, Defendant claims that, pursuant to the Federal Arbitration Act ("FAA"), the parties have a contractual agreement to arbitrate the claims at issue in this case. (*Id.* at 3).

The uncontested facts relating to the arbitration provision are as follows.  On January 24, 2011, Plaintiff completed an Application for Employment for Defendant's car dealership.  (Doc. 31-2).[2]  As part of the application process, Plaintiff also signed the contract containing the arbitration provision at issue.  (Doc. 31-3).  The contract is titled, "Employee Acknowledgement and Agreement."  (Doc. 25-1 at 1).  The Employment Acknowledgment and Agreement is a two-page document that purports to govern certain matters concerning Plaintiff's employment.  (Doc. 25-1 at 1).  A portion of the contracts purports to be an arbitration provision (hereinafter the "Arbitration Agreement").

The Arbitration Agreement provides in relevant part:

> I further agree and acknowledge that the Dealership and I will utilize binding arbitration to resolve all disputes that may arise out of the employment context.  Both the Dealership and I agree that any claim, dispute, and/or controversy that either I may have against the Dealership (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) or the Dealership may have against me, arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Dealership shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the Florida Arbitration Act and all of the Act's other mandatory and permissive rights to discovery.  Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including,

---

[2] In the Complaint, the named Defendant is Top Hat Imports, LLC, d/b/a Tamiami Hyundai. (Doc. 1 at 1).  In a separate acknowledgement that was made part of Plaintiff's employment paperwork, the employer is referred to as "Tamiami Hyundai Mitsubishi."  (Doc. 31-1 at 1).  The parties' submissions refer only to "Tamiami Hyundai."  (*See* Doc. 1; Doc. 31-1).  For purposes of the Motion *sub judice*, the Court draws no distinction between references to "Tamiami Hyundai" and "Tamiami Hyundai Mitsubishi," and the Court finds that both names refer to the named Defendant, Top Hat Imports, LLC, d/b/a Tamiami Hyundai.

2

> but not limited to, any claims of discrimination and harassment, whether they be based on the Florida Civil Rights Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise, with exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the Florida Workers' Compensation Act or Unemployment Act, or as otherwise required by state or federal law.  However, nothing herein shall prevent me from filing and pursing proceedings before the Florida Commission on Human Relations, or the United States Equal Employment Opportunity Commission (although if I choose to pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to the provisions of this Agreement). . . . I understand and agree to this binding arbitration provision, and both I and the Dealership give up our right to trial by jury of any claim I or the Dealership may have against each other.

(Doc. 25-1 at 1–2).

Additionally, the Employee Acknowledgement and Agreement contains a Merger Clause. In relevant part, the Merger Clause provides:

> This is the entire agreement between the Dealership and me regarding dispute resolution, the length of my employment, and the reasons for termination of employment, and this agreement supersedes any and all prior agreements regarding the issues.  It is further agreed and understood that any agreement contrary to the foregoing must be entered into, in writing, by the President of the Dealership.  No supervisor or representative of the Dealership, other than its President, has any authority to enter into any agreement for employment for any specified period of time or make any agreement contrary to the foregoing.  Oral representations made before or after you are hired do not alter this Agreement.

(Doc. 25-1 at 2).  The contract that includes the Arbitration Agreement and Merger Clause is signed by Plaintiff, with no signature block for or signature by a representative of the employer. (*Id.*).  The contract refers throughout to the "Dealership" as Plaintiff's employer, yet the term "Dealership" is never expressly defined anywhere in the contract.  (*Id.*).  The sole reference in the contract to any specific entity appears in the first sentence, which states: "This will acknowledge that I have received my copy of the TAMIAMI FORD Employee Handbook and that I will familiarize myself with its contents."  (Doc. 25-1 at 1).

3

At or around the time the Employee Acknowledgment and Agreement was signed by Plaintiff, Plaintiff also signed a separate untitled document that simply states, "I acknowledge that all employment application materials with the name Tamiami Ford Inc. are in fact for Tamiami Hyundai Mitsubishi.  While a new employee benefit package will be in place, there are no carryover benefits (including vacation)."  ([Doc. 31-4](#)) (hereinafter "Acknowledgment").  This Acknowledgment makes no reference to the term "Dealership" that was used in the contract. (*Id.*).

The primary issue before the Court is whether the term "Dealership," as it is used in the Employment Acknowledgment and Agreement, means Tamiami Ford Inc. or Tamiami Hyundai, the named Defendant's registered fictitious name.

In moving to compel arbitration here, Defendant argues it is in fact the "Dealership" referenced in the Employment Acknowledgment and Agreement and that the Arbitration Agreement is valid because Plaintiff accepted employment with Defendant after signing the Arbitration Agreement on January 24, 2011.  ([Doc. 31 at 2](#)).  Defendant contends Plaintiff's claims in this litigation are "within the scope of the Arbitration Agreement, which applies to all disputes arising out of the employment context, including any claim having any relationship whatsoever with Plaintiff's employment by Defendant."  ([Doc. 25 at 6](#)).  Defendant argues Plaintiff has refused to agree to arbitration as evinced "by filing this civil court action and by not agreeing to voluntarily submit his claims to arbitration after Defendant's repeated requests that he do so."  (*Id.* at 7).  Accordingly, Defendant seeks to have the Court "enter an Order compelling arbitration of Plaintiff's claim and staying these judicial proceedings."  (*Id.*).

In response, Plaintiff argues that Defendant is not a party to the Arbitration Agreement. ([Doc. 29 at 3](#)).  Although, "Plaintiff does not dispute he signed the Arbitration Agreement the

4

Defendant attaches to its Motion," (*id.*), he claims the Arbitration Agreement is not an agreement between Plaintiff and Defendant in this action. Instead, Plaintiff maintains that the Arbitration Agreement is between Plaintiff and Tamiami Ford, Inc., "a separate and distinct Florida corporation" from Defendant. (*Id.*). Plaintiff argues that the Arbitration Agreement does not provide coverage to any entity other than Tamiami Ford, Inc. (*See* Doc. 29 at 4). Therefore, Plaintiff contends that Defendant cannot enforce the Arbitration Agreement against him because Defendant is not in contractual privity and cannot benefit from the Arbitration Agreement. (*See id.*).

Because the parties had not precisely joined the issue as to the language of the Employment Acknowledgment and Agreement, the Undersigned ordered Defendant to file a further reply. (*See* Doc. 30). In its January 10, 2019 Reply, Defendant argues that Plaintiff completed his employment application for Tamiami Hyundai on January 24, 2011, and as part of the hiring process, Plaintiff signed the separate written acknowledgment that states "all employment application materials with the name Tamiami Ford, Inc. are in fact for Tamiami Hyundai Mitsubishi." (Doc. 31 at 2). Thus, Defendant requests the Court compel the parties to arbitrate according to the Arbitration Agreement. (*Id.* at 3).

**II.     Analysis**

    **A.     Federal Arbitration Act**

The FAA, 9 U.S.C. §§ 1-16, "is the substantive law controlling the validity and enforcement of arbitration agreements." *Wash v. Mac Acquisition of Delaware, LLC*, No. 6:14-CV-1424-ORL-40, 2014 WL 5173504, at *2 (M.D. Fla. Oct. 14, 2014). The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

Moreover, "[t]he FAA preempts state law to the extent it treats arbitration agreements differently than other contracts." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005).

Furthermore, with certain exceptions not applicable here, the FAA applies to arbitration agreements involving commerce, and arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2.

An employment agreement containing an arbitration agreement falls within the scope of the FAA. *See Dukes v. Sai Fort Myers B, LLC*, No. 2:14-CV-287-FTM-38, 2015 WL 3650804, at *2 (M.D. Fla. June 11, 2015). Specifically, this Court has allowed the FAA to control an arbitration agreement between a car dealership and its employee. *Id.* In *Dukes v. Sai Fort Myers B, LLC*, the employee sued his employer under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991. *Id.* at *1. The Court granted the employer's Motion to Dismiss and Compel Arbitration because the employee signed binding arbitration agreements as a condition of his employment with a car dealership. *Id.* at *2-3. The Court impliedly found the FAA governed the employee's arbitration agreement because his employment involved commerce. *Id.* Likewise, the Plaintiff in the instant case indisputably signed the Employee Acknowledgement and Agreement that contains the Arbitration Agreement in order to gain employment at Defendant's car dealership. (Doc. 25-1 at 1). Thus, the Undersigned finds the FAA is controlling because the Arbitration Agreement here, as in *Dukes*, involves commerce and does not meet the statutory exception.

More fundamentally, however, this case presents an issue as to whether an agreement to arbitrate was ever entered into between this named Plaintiff and this named Defendant. The

threshold question of whether the parties entered into an agreement to arbitrate is ordinarily an issue for judicial determination. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 296 (2010) (citations omitted). "A court cannot compel parties to arbitrate their dispute in the absence of clear agreement to do so." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1302 (11th Cir. 2017). "In deciding whether the parties agreed to arbitration, the Court applies state law governing the formation of contracts, while at the same time considering the federal policy favoring arbitration." *Wash*, 2014 WL 5173504, at *2 (citing *Caley*, 428 F.3d at 1367-68).

Under Florida law, the Court considers: "(1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Senti v. Sanger Works Factory, Inc.*, No. 6:06-CV-1903-ORL-22DAB, 2007 WL 1174076, at *5 (M.D. Fla. April 18, 2007); *see also Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). "'All questions concerning scope or waiver of the right to arbitrate under contracts should be resolved in favor of arbitration rather than against it.'" *Senti*, 2007 WL 1174076, at *5 (quoting *Zager Plumbing, Inc. v. JPI Nat'l Constr., Inc.*, 785 So. 2d 660, 662 (Fla. 3d Dist. Ct. App. 2001)).

In deciding the validity of the Arbitration Agreement, Plaintiff does not deny that he signed the Arbitration Agreement. (Doc. 29 at 3). Plaintiff only disputes the assertion that the Arbitration Agreement was between the named Defendant in this case and him. (*Id.*). Plaintiff's sole objection to arbitration is that Tamiami Ford, Inc., "a separate and distinct Florida corporation," is the other party to the Arbitration Agreement. (*Id.*). Based on this fact, Plaintiff argues the Court cannot compel arbitration because the named Defendant in this case is not a party to the Arbitration Agreement being invoked. (*Id.* at 4).

7

### B.  Contract Construction

The Undersigned finds Plaintiff's argument concerning the contract unavailing under basic tenets of contract construction. "[W]hen construing a contract, a court should look to the whole contract." *In re Yates Dev., Inc. v. Old Kings Interchange, Inc.*, 256 F.3d 1285, 1290 (11th Cir. 2001); *United States v. Travelers Cas.*, No. 6:17-CV-1984-ORL-40TBS, 2018 WL 6571234, at *6 (M.D. Fla. Dec. 13, 2018). Additionally, the contract "must be interpreted in accordance with its plain meaning so as to give effect to the contract as a whole. If possible, conflicting provisions of a contract are to be read in such a way to give a reasonable interpretation and effect to all provisions." *Disa v. Ashley Furniture Indus., Inc.*, 131 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015). Generally, when the contract contains a merger or integration clause, the contract is viewed as a total and complete agreement. *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 (Fla. 1st Dist. Ct. App. 2005).

Here, the contract at issue is by its plain terms between Plaintiff and the "Dealership." (Doc 25-1 at 1). As stated above, the term "Dealership" is not defined in the contract. (Doc 25-1). The only reference to an actual entity name is the first line of the contract, which states: "I have received my copy of the TAMIAMI FORD Employee Handbook." (Doc 25-1 at 1). The second paragraph states, "I understand that this handbook represents the current policies, regulations, and benefits, and that except for employment at-will status and the Arbitration Agreement, any and all policies or practices can be changed any time by the Dealership." (*Id.*). This sentence is the first time the term "Dealership" is mentioned, but the term "Dealership" is never expressly defined to mean Tamiami Ford or any other entity. "Dealership" continues to be referenced throughout the contract, including the second to last paragraph that provides a merger or integration clause. (*Id.* at 2).

8

If there is a merger clause and an ambiguity in the contract, "courts may consider evidence outside of the plain language in order to determine the intent of the parties at the time of formation of the contract at issue." *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1295-96 (S.D. Fla. 2011). Whether an agreement contains an ambiguity is a question of law. *Cathbake Inv. Co. v. Fisk Elec. Co.*, 700 F.2d 654, 656 (11th Cir. 1983). Under Florida law, an agreement is ambiguous "if it is susceptible to two or more reasonable interpretations that can fairly be made." *Cont'l Ins. Co. v. Roberts*, 410 F.3d 1331, 1333 (11th Cir. 2005). Here, both Plaintiff and Defendant interpret "Dealership" to refer to entities, with Plaintiff interpreting "Dealership" to mean Tamiami Ford, Inc., and Defendant interpreting "Dealership" to mean Top Hat Imports, Inc. d/b/a Tamiami Hyundai. (*See* Doc. 31 at 2). (*Id.*). An ambiguity clearly exists because there is more than one reasonable interpretation of the term "Dealership."

In order to resolve the ambiguity, it must be determined if the ambiguity is latent or patent. *Johnson Enter. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1310 (11th Cir. 1998). Patent ambiguities are discrepancies appearing on the face of the contract itself. *See PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1234 (M.D. Fla. 2012); *Crown Mgmt. Corp. v. Goodman*, 452 So. 2d 49, 52 (Fla. 2d Dist. Ct. App. 1984). The language of the contract creates a patent ambiguity by "the use of defective, obscure, or insensible language," and extrinsic evidence cannot be used to remove this patent ambiguity. *Crown Mgmt. Corp.*, 452 So. 2d at 52.

However, extrinsic evidence may be used if there is a latent ambiguity. *Hashwani v. Barbar*, 822 F.2d 1038, 1040 (11th Cir. 1987). A latent ambiguity "is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic

9

evidence is necessary for interpretation or a choice between two possible meanings." *Johnson Enter.*, 162 F.3d at 1310.  While the language in the contract is clear, a latent ambiguity may exist when some extrinsic fact or evidence "creates a necessity for interpretation or a choice among two or more meanings." *MDS (Canada), Inc.*, 822 F. Supp. 2d at 1297.  Importantly, a latent ambiguity may exist when the contract does not define an essential term.  *Langford v. Paravant, Inc.*, 912 So. 2d 359, 361 (Fla. 5th Dist. Ct. App. 2005).  When a latent ambiguity exists, the trial court may consider extrinsic evidence to determine the parties' intent and meaning of the term.  *See* Cathbake Inv. Co. v. Fisk Elec. Co., 700 F.2d 654 (11th Cir. 1983); Landis v. Mears, 329 So. 2d 323 (Fla. 1976).

Here, the ambiguity is latent because the contract fails to define the term, "Dealership," which is an essential term.  Plaintiff and Defendant ascribe different meanings for the term "Dealership."  Thus, extrinsic evidence is necessary to determine the parties' intent and the meaning of the term "Dealership."

### C. Extrinsic Evidence

Under Florida law, courts may consider extrinsic evidence such as the course of performance to determine a contract's meaning.  *Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*, 700 F. App'x 935, 939 (11th Cir. 2017).  Post-contract conduct is appropriate extrinsic evidence. *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1253 (S.D. Fla. 2017).  Extrinsic evidence may include affidavits and other relevant evidence appropriate for interpretation of the agreement.  *See Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 49 (Fla. 1st Dist. Ct. App. 2005).  Extrinsic evidence is relevant when it helps "discern the parties' intent" and shows "the actual agreement the parties believed they were entering." *Coyote Portable Storage, LLC v. Pods Enter., Inc*., 618 F. App'x 525, 530 (11th Cir. 2015).  Here, relevant evidence includes the

extrinsic materials filed by both parties including Robert Zellers's Affidavit, Plaintiff's W-2 Wage and Tax Statement, and the other employment application materials Plaintiff completed on January 24, 2011.  (Doc. 29-3, Doc. 31-1, Doc. 31-2–31-4).

Defendant filed the Affidavit of Robert Zellers.  (Doc 31-1 at 1).  Robert Zellers is the President of Tamiami Ford, Inc. and Manager of Top Hat Imports LLC d/b/a Tamiami Hyundai.  In the Affidavit, Mr. Zellers stated that Plaintiff applied to and was hired by Tamiami Hyundai.  (Doc. 31-1 at 1).  Mr. Zellers also stated that Tamiami Hyundai would use some of Tamiami Ford's employment forms in their application materials, but Tamiami Hyundai requires the employees to acknowledge "those forms applied to Tamiami Hyundai."  (*Id.*).  Mr. Zellers stated "as a condition of [Plaintiff's] employment, he was required to sign the Employee Acknowledgment and Agreement, which included an arbitration agreement, as well as the acknowledgment that all employment application materials with the name Tamiami Ford were for Tamiami Hyundai."  (Doc. 31-1 at 1-2).

Additionally, Plaintiff provided his W-2 Wage and Tax Statement.  (Doc. 29 at 3).  Plaintiff's W-2 Wage and Tax Statement indicates Defendant employed and paid Plaintiff.  (*Id.*).  Defendant hired Plaintiff to work at the car dealership Tamiami Hyundai.  (Doc. 1 at 2).  As part of the hiring process, Plaintiff completed an Application for Employment and signed the contested Arbitration Agreement and the Acknowledgment.  (Docs. 31-3 - 31-4).  In the Acknowledgement, Plaintiff acknowledged that Tamiami Ford employment application materials were in fact for Tamiami Hyundai.  (Doc. 31-4 at 1).

Further, Plaintiff signed the Arbitration Agreement with the intent to obtain employment at Defendant's dealership and that he was in fact so employed.  (*See* Docs. 31-3 & 1 at 2.).  Defendant gave Plaintiff the contract with the intent that the contract would be binding between

11

Plaintiff and Defendant. (Doc. 25 at 2). Plaintiff has presented no evidence that he was applying for or that he intended to work for Tamiami Ford, Inc. or any other dealership, and Plaintiff admits Defendant's dealership actually employed him as a Service Manager in January 2011. (Doc. 1 at 2).

Based on the foregoing, Plaintiff's argument that the Arbitration Agreement involves a different legal entity from the named Defendant in this case is unpersuasive because the relevant extrinsic evidence shows that Plaintiff entered into the Arbitration Agreement with this Defendant as a condition of his employment with this Defendant and that he was thereafter, in fact, employed by and compensated by this Defendant.

### III.     Conclusion

The Undersigned finds, under the FAA, the Arbitration Agreement is enforceable and valid. While the Arbitration Agreement gives rise to a latent ambiguity because it does not define the term "Dealership," the ambiguity is readily resolved through permissible extrinsic evidence. Thus, the Undersigned finds that the named Defendant, Top Hat Imports, LLC, d/b/a Tamiami Hyundai, is a proper party to the Employment Acknowledgment and Agreement and the Arbitration Agreement contained therein, and that Defendant is entitled to compel arbitration in this case.

For the foregoing reasons, the Undersigned recommends that Defendant Top Hat Imports, LLC's Motion to Compel Arbitration and Stay Case (Doc. 25) be granted.

Accordingly, it is **RESPECTFULLY RECOMMENDED**:

(1)     The Motion to Compel Arbitration and Stay Case (Doc. 25) be **GRANTED**.

(2) The parties be directed to arbitrate this action promptly and to notify the Court when arbitration is completed.

(3) This action be stayed pending arbitration.

(4) The Clerk of Court be directed to terminate all deadlines and administratively close this file until the parties notify the Court that the parties have completed arbitration and either the stay is due to be lifted or the case is due to be dismissed.

Respectfully recommended in Chambers in Ft. Myers, Florida on February 14, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
Counsel of Record
Unrepresented Parties